STEVEN G. KALAR
Federal Public Defender
ELLEN V. LEONIDA
Assistant Federal Public Defender
450 Golden Gate Avenue, 19th floor
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: ellen_leonida@fd.org

Counsel for Defendant,
PEDRO MARTINEZ-ELVIR

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>           PLAINTIFF, <br><br> v. <br><br> PEDRO JOSIEL MARTINEZ-ELVIR, <br><br>           DEFENDANT. | CR 19-545 SI <br><br> DEFENDANT'S SENTENCING MEMORANDUM <br><br> HONORABLE SUSAN ILLSTON <br> DATE: FEB. 21, 2020 <br> TIME: 11:00 A.M. |

CR 19-545 SI
Defendant's Sentencing Memorandum

1

1. **INTRODUCTION**

Pedro Martinez grew up in abject poverty in Honduras. He lived in a mud shack without running water or electricity, in a village terrorized by gang members. In 2017, at the age of 16, he fled to the United States. On August 6, 2019, Mr. Martinez turned 18. Two months later, desperate to repay his debt to the coyote who brought him to this country, he was arrested for selling $19.00 worth of heroin to an undercover officer in the Tenderloin. Additional suspected narcotics were found on his person. He pled guilty to violations of 21 U.S.C. § 841 and now comes before this court for sentencing.

Despite the seriousness of these charges, the government chose to only test a portion of the suspected contraband. Because there is no reliable measure of the quantity of drugs Mr. Martinez possessed, the Court should apply the minimum advisory Guidelines applicable to the narcotics Mr. Martinez admitted to possessing: offense level 12. After a two level reduction for acceptance of responsibility, the total offense level would be 10, with an attendant advisory Guideline range of 6-12 months. A slight variance—to a time served sentence—would be more than sufficient to punish Mr. Martinez for his conduct and serve the goals of sentencing.

2. **DISCUSSION**

    **2.2   The Government Has Not Met Its Burden of Establishing the Total Weight of the Narcotics for Purposes of Calculating the Advisory Sentencing Guidelines.**

Mr. Martinez objects to the Guideline calculation in the PSR. Because there is no reliable quantification of the drugs found in Mr. Martinez's possession on October 1, 2019, the court should adopt the lowest offense level applicable to the drugs he admitted to possessing under Guideline § 2D1.1(c): offense level 12. U.S.S.G. § 2D1.1(c)(14). It is the government's burden to prove the facts necessary to compute the base offense level under Guideline § 2D1.1. *U.S. v. Harrison-Philpot*, 9778 F.2d 1520, 1522 (9th Cir. 1992). Here, the government provided probation with laboratory reports which showed that only some of the items seized from Mr. Martinez had been tested. The PSR thus reports that the laboratory indicated a confidence interval in lieu of actually testing all of the items submitted and, based on that, estimates the

weight of the items that it assumes—without testing—are narcotics. PSR ¶ 7. The PSR calculates the converted drug weight of the suspected narcotics using these estimates and assumptions. *Id*. It does so despite acknowledging that "not every unit of suspected narcotics was tested for the presence of an illegal substance, as such, the Base Offense Level based on the total net weights may exaggerate the seriousness of the offense." ¶ 65. The Court cannot rely on estimates and inferences regarding something as easily quantifiable as the nature and weight of the suspected narcotics seized in this case.

Because the government has not met its burden, the adjusted offense level should be 12. Subtracting two levels for acceptance of responsibility, the total offense level would be 10. In Mr. Martinez's criminal history category (I), the resulting advisory Guideline range is 6-12 months. For the reasons discussed below, a variance from that range is warranted here.

### 2.3   A Sentence of Credit for Time Served Would Be Sufficient, but not Greater than Necessary, to Satisfy the Goals of 18 U.S.C. § 3552(a).

A sentence of time served is warranted by a consideration of the factors enumerated in 18 U.S.C. § 3553(a). Mr. Martinez grew up in utter poverty. He lived in a mud hut with his parents and siblings. They had no electricity, plumbing, or running water and could not afford warm clothes in winter. The family did not always have enough food. After sixth grade, Mr. Martinez's family could no longer afford to keep him in school and he started working. In the mornings he did the grueling work of planting and cutting sugarcane—a job that often resulted in pain as thorns ripped into his body. In the afternoons he went into the village, where he worked taking care of livestock. At the age of 18, Mr. Martinez still cannot read or write. PSR ¶¶ 31-32.

Additionally, Mr. Martinez's village was plagued by gang violence: gang members routinely terrorized the residents and forcibly recruited young boys. Mr. Martinez regularly had to run into the mountains to hide from the gang. One of his cousins was not so lucky: the gang caught him and tattooed his entire face with gang signs. Fearing a similar fate, Mr. Martinez made the treacherous journey to the United States at the age of 16. He broke his toes on that trek

and walking remains painful for him. PSR ¶ 34, 37. His history and characteristics thus warrant the variance he is requesting. *See* 18 U.S.C. § 3553(a)(1).

The nature and circumstances of this offense similarly support a variance from the advisory guideline range. *See* 18 U.S.C. § 3553(a)(1). Mr. Martinez was arrested following a hand-to-hand drug transaction in the Tenderloin, an offense he committed out of desperation to pay a debt he owes the smuggler who facilitated his escape to the United States. PSR ¶ 35. Mr. At 18 years old, with no criminal record, Martinez is certainly not a drug kingpin. However, despite his youth, despite the fact that he had no criminal record, and despite the scale of his crime, Mr. Martinez was charged with a felony in federal court. He was not afforded the opportunity to participate in a diversion program or any of the other rehabilitative options that would be available in state court for a young, first-time, low-level offender. The four months he has spent in custody already constitute his longest (and only) jail sentence. PSR ¶¶ 21-27.

Finally, the variance Mr. Martinez requests is justified in light of the devastating collateral consequences of this federal conviction. After serving his sentence he will be deported to Honduras, where he will be forced to confront the gang violence that he fled two years ago. Honduran gangs are notorious for conscripting young men in the villages. They are also notorious for inflicting horrific retribution on men who are deported back to Honduras after escaping to avoid gang membership. In recent years many young men have been beaten, burned, maimed, and murdered following their deportation to Honduras from the United States. Families of the young men who are targeted by gang members report moving every few months, but still the gang eventually finds them and exacts its revenge.[1] This is the situation to which Mr. Martinez will be returning upon the completion of his sentence.

///

///

---

[1] See https://www.pbs.org/newshour/show/honduran-migrants-deported-from-the-u-s-often-face-a-grim-fate,

CR 19-545 SI
Defendant's Sentencing Memorandum

4

**3. CONCLUSION**

Pedro Martinez is 18 years old and this low-level drug sale is his only criminal conviction. The four months he has already spent in custody is sufficient, but not greater than necessary, to serve the goals of 18 U.S.C. § 3553(a) in this case.

Dated: February 18, 2020

                                                Respectfully submitted,

                                                STEVEN G. KALAR
                                                Federal Public Defender

                                                  /S/
                                                ELLEN V. LEONIDA
                                                Assistant Federal Public Defender